UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X

EMPLOYERS INSURANCE COMPANY
OF WAUSAU,

                    Petitioner,

          and

PALADIN REINSURANCE CORPORATION,

                    Respondent.

--------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2-21-08_

2008 Civ. 0042 (JFK)

**ORDER**

Upon the Stipulation of counsel for both parties hereto, it is hereby

ORDERED that the Revised Final Award in the arbitration between the parties (the "Award"), a copy of which is Exhibit 1 hereto, is hereby confirmed pursuant to 9 U.S.C. § 9; and it is further

ORDERED that the Award shall be entered as a Judgment of this Court; and it is further

ORDERED that, pursuant to 9 U.S.C. § 13, copies of the agreements between the parties as provided by Petitioner, which are annexed as Exhibit 2 hereto, and a copy of the Petition to Confirm Revision Final Arbitration Award in this proceeding, which is annexed as Exhibit 3 hereto, shall also be filed with the Clerk; and it is further

ORDERED that upon the above entry of said judgment, this proceeding shall be dismissed with prejudice against renewal. Each party hereto shall bear its own costs.

Dated: New York, New York
       February 21, 2008

                                        _____
                                        John F. Keenan, U.S.D.J.

421-8190\Order.wpd

In the Matter of the Arbitration Between
**PALADIN REINSURANCE CORPORATION,**
Petitioner

Before

and

Robert Robinson, Arbitrator
Paul Hawksworth, Arbitrator
Elizabeth M. Thompson, Umpire

**EMPLOYERS INSURANCE COMPANY OF WAUSAU**
Respondent

## REVISED FINAL AWARD

This arbitration was commenced by demand served by Paladin Reinsurance Corporation
(Paladin) dated November 28, 2006. Respondent Employers Insurance Company of
Wausau (Wausau) filed a Motion to Dismiss Paladin's claims as time barred. After full
briefing and submission of evidence by the parties, the Panel conducted a telephonic
hearing on August 8, 2007. The Panel, after having considered and deliberated
concerning the evidence presented and the written and oral submissions of the parties,
issued its award on August 29, 2007. Subsequently Paladin requested the Panel to clarify
its award. The Panel, after having considered the parties' submissions with respect to
Paladin's request for clarification issues, the following revised final award:

1.  Both parties submitted documentary evidence in support of their respective
    positions. The parties acknowledged that the panel has been provided with all the
    information required to rule on the issue raised by Wausau's motion. See August 8,
    2007 Hearing Transcript, p 52. The Panel therefore has treated this motion as a
    Motion for Summary Judgment.

2.  It is undisputed that New York law applies to the contracts at issue and that the
    governing statute of limitations is the latter of six years from the date of the alleged
    breach or two years from the date Paladin knew of, or through the exercise of
    reasonable diligence could have discovered the alleged breach.

3.  The Panel finds that Paladin knew of, or with the exercise of reasonable diligence
    could have discovered, Wausau's alleged breach of the retention warranties in the
    facultative certificates at issue more than two years prior to October 26, 2001.
    Accordingly the Panel finds that Paladin's claims in this proceeding are time barred.

4.  Each party shall bear its own costs and fees and the fees and expenses of its party
    appointed arbitrator. Each party shall pay one half of the fees and costs of the
    umpire. The fees and expenses of the arbitrators and umpire shall be paid within
    30 days of submission of their billings.



5   All other requests of the parties are denied

Dated   September 12  2007

*Robert Robinson*   *entl by permission*
Robert Robinson  Arbitrator

*Paul Hawksworth*   *entl by permission*
Paul Hawksworth, Arbitrator

*Elizabeth M Thompson*
Elizabeth M  Thompson  Umpire

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER**

C 1410

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

"2"

CEDING CO. AND ADDRESS

Employers Insurance of Wausau
A Mutual Company
C/O PCM Intermediaties
130 William Street
New York, New York 10038

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

ATTENTION:

## DECLARATIONS

| | |
|---|---|
| **INSURED & ADDRESS** | American Bureau of Shipping<br>New York, New York 10006 |
| **COMPANY POLICY NUMBER** | 5736-00-200538 |
| **COMPANY POLICY PERIOD** | 9/1/83 - 9/1/86 |

**CERTIFICATE PERIOD** 9/1/83 - 9/1/86

| | |
|---|---|
| **ITEM 1**<br>TYPE OF INSURANCE | Professional Liability (as per original) |
| **ITEM 2**<br>POLICY LIMITS AND APPLICATIONS | $10,000,000 ea cl/agg in excess of $750,000 ea cl/ $2,000,000 agg SIR<br>This Layer: $3,000,000 ea cl/agg in excess of $2,000,000 ea cl/agg in excess of $750,000 ea cl/ $2,000,000 agg SIR |
| **ITEM 3**<br>COMPANY RETENTION | $500,000 $575,000 |
| **ITEM 4**<br>REINSURANCE ACCEPTED | $300,000 |
| **ITEM 5**<br>BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| **ITEM 6**<br>CANCELLATION | 90    DAYS NOTICE |

| **PREMIUM THIS CERTIFICATE** $12,500.00 | ☒ FIXED  ☐ DEPOSIT | CED. COMM. 25% |
|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | $12,500.00 | | | |
| DATE 9/1/84 | TBA | | | |
| DATE 9/1/85 | TBA | | | $9,375.00 |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE 11/30/83    BY _____
AUTHORIZED SIGNATURE



PALADIN REINSURANCE CORPORATION
123 WILLIAM STREET
NEW YORK, NEW YORK 10038
**(hereinafter called the Reinsurer)**

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURANCE AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company, subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve that reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate or where the Company has created a loss reserve of fifty (50) per cent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nonetheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: In respect to reinsurance provided on an Excess of Loss basis in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro-Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly, provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section I. of these general conditions.

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement of making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G. WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H. PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I. CANCELLATION. (a)** Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and cancellation of the earned premium shall follow the Company calculation in the use of short rate or pro-rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, the reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that as a condition precedent to any right of action hereunder such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, the other by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties. Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____    Secretary

_____    President

# PALADIN REINSURANCE CORPORATION

A Company Managed By
**SYNCORP**

ENDORSEMENT NO.: ___1___

THIS ENDORSEMENT, EFFECTIVE _9/1/84_ , FORMS A PART OF

CONTRACT NO.: _C 1410_ ISSUED TO _Employers Insurance of Wausau, a Mutual Co._

ORIGINAL INSURED: _American Bureau of Shipping_ POLICY NO.: _5736-00-200538_

In consideration of the original premium charged it is understood
and agreed that the company policy period is amended to read as follows:

September 1, 1983 to September 1, 1984

It is further agreed that this certificate is terminated as of
September 1, 1984 at 12:01 A.M. standard time at the address of the
named insured.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _October 4, 1984_

_Janise Hennard_
AUTHORIZED SIGNATURE

123 William Street • New York, New York 10038 • Telephone 212-732-0825 • Telex 141498

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER**
**C** 1143

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau
a Mutual Company

C/O  J.L. Kelley, Inc.
59 John Street
New York, N.Y.    10038

ATTENTION:

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| **INSURED & ADDRESS** | A. Epstein & Sons International, Inc.  etal<br>Chicago, IL    60609 |
| **COMPANY POLICY NUMBER** | 5733-00-300096 |
| **COMPANY POLICY PERIOD** | 1/22/82 - 1/22/83 |
| **CERTIFICATE PERIOD** | 1/22/82 - 1/22/83 |

| | |
|---|---|
| **ITEM 1**<br>TYPE OF INSURANCE | Architects & Engineers Professional Liability |
| **ITEM 2**<br>POLICY LIMITS AND APPLICATIONS | $10,000,000 each claim & annual aggregate in excess of $250,000 Self Insured Retention each and every claim including expense |
| **ITEM 3**<br>COMPANY RETENTION | A)  $100,000 part of $2,000,000 each claim & agg excess of S.I.R.<br>B)  $2,000,000 part of $3,000,000 each claim & agg in excess of A<br>C)  $5,000,000 each claim & agg in excess of B, all including other facultative reinsurance |
| **ITEM 4**<br>REINSURANCE ACCEPTED | A)  $100,000 part of $2,000,000 each claim & agg excess of S.I.R.<br>B)  $400,000 part of $3,000,000 each claim & agg XS of $2,000,000<br>C)  nil part of $5,000,000 XS of $5,000,000 |
| **ITEM 5**<br>BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| **ITEM 6**<br>CANCELLATION | 45    DAYS NOTICE    Being 15 days plus original |

| PREMIUM THIS CERTIFICATE | $A) $7,400<br>B) $7,600  Total $15,000. | ☒ FIXED    ☐ DEPOSIT | CED. COMM. 25% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $11,250.00 Net Being $15,000.00 Less Cede Comm. |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |
| MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | | | |

DATE February 25, 1982    BY _____
AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___1___

RECEIVED
WAUSAU INTL

JUN 1 1982

This endorsement, effective __January 22, 1982__ forms a part of

Contract No.: __C 1143__ issued to __Employers Insurance of Wausau - A Mutual Co.__

Original Insured: __A. Epstein & Sons  etal__ Policy No.: __5733-00-300096__

　　In consideration of an additional premium of $187.50 Net being
$250.00 less 25% ceding commission it is agreed that reinsurance of
#7 of original cover is accepted under this certificate.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: 3 / 5 / 82

Authorized Signature

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: __2__

RECEIVED
WAUSAU INT'L

JUN 1 1982

This endorsement, effective __January 22, 1982__ forms a part of

Contract No.: __C 1143__ issued to __Employers Ins. of Wausau - A Mutual Comp.__

Original Insured: __A. Epstein & Sons, etal__ Policy No.: __5733-00-30096__

It is understood and agreed that declarations on the certificate are amended to read as follows:

Item 3 - Company Retention (A) $1,400,000 part of $2,000,000 excess of SIR
      (B) nil this layer
      (C) $2,000,000 part of $5,000,000 excess of $5,000,000 excess of SIR

Item 6 __Cancellation__ should read __75 days__
      __in all__



RECEIVED

MAR 1 0 1982

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: 3/ 8/ 82

Authorized Signature

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: __2__ (Revised)

RECEIVED
WAUSAU INT'L

JUN 1 1982

This endorsement, effective __January 22, 1982__ forms a part of

Contract No.: __C 1143__ issued to __Employers Ins. of Wausau - A Mutual Co.__

Original Insured: __A. Epstein & Sons,__ Policy No.: __5733-00-30096__
                         etal

It is understood and agreed that declarations on the
certificate are amended to read as follows:


Item 3 - Company Retention  (A) $1,400,000 part of $2,000,000
excess of SIR.
        (B)  Nil this layer
        (C)  $1,100,000 part of $5,000,000 excess of  SIR

Item 6 Cancellation should read 75 days
        in all



ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: __3/7/82__

Authorized Signature

# PALADIN REINSURANCE CORPORATION

RECEIVED
WAUSAU INT'L
MAY 2 6 1982

ENDORSEMENT NO.: __2__ (2nd Revision)

RECEIVED
WAUSAU INT'L
MAY 0 6 1982

This endorsement, effective __January 22, 1982__ forms a part of

Contract No.: __C 1143__ issued to __Employers Ins. of Wausau-A Mutual__ Co.

Original Insured: __A. Epstein & Sons__  Policy No.: __5733-00-300096__
                              etal

It is understood and agreed that declarations on the certificate
are amended to read as follows:


Item 3 - Company Retention  (A)  $1,400,000 part of $2,000,000
excess of SIR.
        (B)  Nil this layer
        (C)  $1,100,000 part of $5,000,000 excess of $5,000,000

Item 6 Cancellation should read 75 days
        in all

RECEIVED
WAUSAU INT'L
JUN 1 1982



ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _4/28 82_                    _____
                                   Authorized Signature

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

| CERTIFICATE NUMBER |
|---|
| **C** 1161 |

WAUSAU INT'L.

| | |
|---|---|
| RENEWING CERTIFICATE | APR 19 1982 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

CEDING CO. AND ADDRESS

Employers Insurance of Wausau
A Mutual Company

C/O  PCM Intermediaries, Ltd.
90 William Street
New York, N.Y.    10038
ATTENTION: Mr. Alfred Amend

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Coopers & Lybrand<br>New York, N.Y.    10020 |
| COMPANY NUMBER | 5733-00-100061 |
| COMPANY POLICY PERIOD | 3/1/82  -  3/1/83 |

| CERTIFICATE PERIOD |
|---|
| 3/1/82  -  3/1/83 |

| ITEM 1 TYPE OF INSURANCE | Accountants Professional Liability |
|---|---|
| ITEM 2 POLICY LIMITS AND APPLICATIONS | This Layer:  $613,500 part of $7,000,000 excess of $3,000,000 each claim/$6,000,000 aggregate $1,000,000 thereafter |
| ITEM 3 COMPANY RETENTION | $363,500. net treaty and other facultative reinsurance |
| ITEM 4 REINSURANCE ACCEPTED | $250,000 |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 8 CANCELLATION | 45          DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $50,000. | ☒ FIXED    ☐ DEPOSIT | CED. COMM.  27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $36,250. Net Being $50,000. Less Ceding Comm. |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE  April 5, 1982          BY 

AUTHORIZED SIGNATURE

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

CERTIFICATE NUMBER
**C 1346**

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau – A Mutual
Company

c/o PCM Intermediaries, Inc.
130 William St.
ATTENTION: New York, N.Y. 10038

| | |
|---|---|
| RENEWING CERTIFICATE | C1161 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Coopers & Lybrand New York, N.Y. 10020 |
| COMPANY POLICY NUMBER | 5734-00-100061 |
| COMPANY POLICY PERIOD | 3/1/83 to 3/1/84 |
| CERTIFICATE PERIOD | 3/1/83 to 3/1/84 |

| | |
|---|---|
| ITEM 1 TYPE OF INSURANCE | Excess Accountants Professional Liability |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $613,500 part of $7,000,000 each claim/aggregate excess of $3,000,000 each claim / $6,000,000 aggregate with a $1,000,000 each claim deductible thereafter |
| ITEM 3 COMPANY RETENTION | $163,500 each claim/aggregate part of total limits stated in item 2 Net & Treaty |
| ITEM 4 REINSURANCE ACCEPTED | $250,000 each claim/aggregate apart of total limits stated in item 2 |
| ITEM 5 BASIS OF REINSURANCE | ☐EXCESS OF LOSS   ☒CONTRIBUTING EXCESS   ☐NON-CONCURRENT |
| ITEM 6 CANCELLATION | 45   DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $50,000.00 | ☐FIXED   ☐DEPOSIT | | CED. COMM.   30% |
|---|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | |
| DATE | | | | $35,000.00 |
| DATE | | | | |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE March 22, 1983

BY _____
AUTHORIZED SIGNATURE

**PALADIN REINSURANCE CORPORATION**
NEW YORK, NEW YORK 10038

**(hereinafter called the Reinsurer)**

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay: (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory succesor of the Company in accordance with the provisions of Section L of these general conditions.

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement of making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G. WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H. PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I. CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to Arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                    _____ President

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

CERTIFICATE NUMBER

**C 1347**

# PALADIN REINSURANCE
## CORPORATION

NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau – A
Mutual Company

ATTENTION:
c/o PCM Intermediaries, Inc.
130 William St.
New York, N.Y. 10038

| | |
|---|---|
| RENEWING CERTIFICATE | C1162 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Coopers & Lybrand<br>New York, N.Y. 10020 |
| COMPANY POLICY NUMBER | 5734-00-100062 |
| COMPANY POLICY PERIOD | 3/1/83 to 3/1/84 |

CERTIFICATE PERIOD
3/1/83 to 3/1/84

| | |
|---|---|
| ITEM 1 TYPE OF INSURANCE | Excess Accountants Professional Liability |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $1,660,000 part of $10,000,000 each claim/aggregate excess of $7,000,000 each claim/aggregate excess of $3,000,000 each claim/$6,000,000 aggregate with a $1,000,000 each claim deductible thereafter |
| ITEM 3 COMPANY RETENTION | $160,000 each claim/aggregate part of total limits stated in item 2 Net & Treaty |
| ITEM 4 REINSURANCE ACCEPTED | $250,000 each claim/aggregate part of total limits stated in item 2 |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☑ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | 45    DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $18,125.00 | ☐ FIXED  ☐ DEPOSIT | CED. COMM. 27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|
| AT INCEPTION | | | |
| DATE | | | |
| DATE | | | $13,140.63 |
| DATE | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE _____ March 22, 1983 _____  BY _____

AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

123 WILLIAM STREET

NEW YORK, NEW YORK 10038

## (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company, subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay: (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits; and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement of making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration; one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N.   INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Company through the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____   Secretary

_____   President

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

# PALADIN REINSURANCE
## CORPORATION
### NEW YORK, NEW YORK

| | CERTIFICATE NUMBER |
|---|---|
| | **C** 1265 |

CEDING CO. AND ADDRESS

Employers Insurance of
Wausau A Mutual Co.

C/O PCM Intermediaires, Ltd.

ATTENTION:

| | |
|---|---|
| RENEWING CERTIFICATE | 1065 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| INSURED & ADDRESS | Frank B. Hall & Co., Inc. etal<br>Briarcliff Manor NY 10510 |
|---|---|
| COMPANY POLICY NUMBER | 5733-00-100240 |
| COMPANY POLICY PERIOD | 8/1/82 to 8/1/83 |

CERTIFICATE PERIOD: One Year

| ITEM 1 TYPE OF INSURANCE | Umbrella Liabiltiy including Professional Liability |
|---|---|
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $30,000,000 each claim/occurrence/aggregate in excess of underlying insurance or self insurance |
| ITEM 3 COMPANY RETENTION | various, net & treaty declared to underwriters |
| ITEM 4 REINSURANCE ACCEPTED | $500,000 each claim/occ/agg part of $15,000,000 each claim/occ/agg/ excess of $5,000,000 each claim/ occ/ agg excess of underlying insurance or SIR |

| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS | ☑ CONTRIBUTING EXCESS | ☐ NON-CONCURRENT |
|---|---|---|---|

| ITEM 6 CANCELLATION | 105 DAYS NOTICE |
|---|---|

| PREMIUM THIS CERTIFICATE | $7496.00 | ☑ FIXED ☐ DEPOSIT | CED. COMM. 22.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | |
| DATE | | | | $5809.00 net |
| DATE | | | | |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE    9/1/82                BY _____
                              AUTHORIZED SIGNATURE

(hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company, subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro-Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to this reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. (b) This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation (in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y. unless some other location is mutually agreed upon by the two parties in interest.

**N.   INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____  Secretary                    _____  President

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER**

**C 1435**

# PALADIN REINSURANCE
## CORPORATION
### NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau,
A Mutual Company
C/O New Amsterdam Excess, Inc.
130 William Street
New York, N.Y. 10038

| | |
|---|---|
| RENEWING CERTIFICATE | ...325 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

ATTENTION:

## DECLARATIONS

| | |
|---|---|
| **INSURED & ADDRESS** | Fred S. James & Company & Wigham-Poland Holdings, Ltd. |
| **COMPANY POLICY NUMBER** | (A) 5735-03-100143   (B) 8253-03-670053 |
| **COMPANY POLICY PERIOD** | 1/1/84 to 1/1/85    CERTIFICATE PERIOD   1/1/84 to 1/1/85 |
| **ITEM 1 TYPE OF INSURANCE** | Excess Umbrella Including Professional Liability |
| **ITEM 2 POLICY LIMITS AND APPLICATIONS** | A) $2,500,000 part of $5,000,000 each claim/occ in the agg where applicable excess of underlying. <br> B) ₤1,250,000 part of ₤2,500,000 each claim/occ or in the agg where applicable excess of underlying |
| **ITEM 3 COMPANY RETENTION** | A) $750,000 Net&Treaty <br><br> B) ₤375,000 Net&Treaty |
| **ITEM 4 REINSURANCE ACCEPTED** | A) $500,000 part of total limits set forth above <br> B) ₤250,000 part of total limits set forth above |
| **ITEM 5 BASIS OF REINSURANCE** | ☐ EXCESS OF LOSS      ☒ CONTRIBUTING EXCESS      ☐ NON-CONCURRENT |
| **ITEM 6 CANCELLATION** | 75   DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $25,000 | ☒ FIXED   ☐ DEPOSIT | CED. COMM. 27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | |
| DATE | | | | $18,125.00 |
| DATE | | | | |
| DATE | | | | |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE   May 31, 1984          BY _____
AUTHORIZED SIGNATURE



# PALADIN REINSURANCE CORPORATION
123 WILLIAM STREET
NEW YORK, NEW YORK 10038

## (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay: (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to a reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly, provided, however, in the event of insolvency of the Company payment to the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of those general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books, records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages (i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company to the Reinsurer not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N.   INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risks of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limits of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.



# PALADIN REINSURANCE CORPORATION

A Company Managed By
**SYNCORP**

ENDORSEMENT NO.:  ___1___

THIS ENDORSEMENT, EFFECTIVE __1/1/84__, FORMS A PART OF

CONTRACT NO.: __C 1435__    ISSUED TO __Employers Insurance of Wausau, A Mutual__ Co.

ORIGINAL INSURED: __Fred S. James & Company &__    POLICY NO.: __A/5735-03-100143__
         __Wigham - Poland Holdings,Ltd.__         __B/8235-03-670053__

It is understood and agreed that the certificate is amended to
read as follow:

Company Policy Number:    B) 8235-03-670053

Item 3 ( Company Retention): A) $ 1,250,000 Net & Treaty

                          B) ₤  625,000 Net & Treaty

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE:___August 29, 1984___        _____
                                  AUTHORIZED SIGNATURE



CERTIFICATE OF CASUALTY FACULTATIVE RE. SURANCE

**CERTIFIC**
**C 115**

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

Employers Insurance of Wausau
A Mutual Company

C/O   PCM Intermediaries, Ltd.
90 William Street
New York, N.Y.    10038

ATTENTION: Mr. Les Ross

## DECLARATIONS

| INSURED & ADDRESS | Gulf Oil Corporation  etal<br>Pittsburgh,  PA   15230 | |
|---|---|---|
| COMPANY POLICY NUMBER | 5733 00 200290 | |
| COMPANY POLICY PERIOD | 3/1/82 - 3/1/83 | CERTIFICATE PERIOD<br>3/1/82 - 3/1/83 |

| ITEM 1<br>TYPE OF INSURANCE | Excess Liability |
|---|---|
| ITEM 2<br>POLICY LIMITS AND APPLICATIONS | $500,000 part of $10,000,000 excess of $10,000,000 each occurrence |
| ITEM 3<br>COMPANY RETENTION | $350,000 including other facultative reinsurance |
| ITEM 4<br>REINSURANCE ACCEPTED | $150,000 |
| ITEM 5<br>BASIS OF REINSURANCE | ☐ EXCESS OF LOSS        ☒ CONTRIBUTING EXCESS        ☐ NON-CONCURRENT |
| ITEM 6<br>CANCELLATION | 105    DAYS NOTICE    Being 15 days plus original |

| PREMIUM THIS CERTIFICATE | $7,110.00 | ☒ FIXED   ☐ DEPOSIT | CED. COMM.   27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $5,154.75 |
| DATE | | | | Being |
| DATE | | | | $7,110. Less |
| DATE | | | | Cede Comm. |
| MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | | | |

DATE   March 24, 1982         BY _____
AUTHORIZED SIGNATURE

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURANCE AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contracting excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay: (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows. (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) in the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N.   INTERMEDIARY.** The intermediary named herein is hereby recognized as the intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary                    _____ President

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER**
**C 1343**

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau, A Mutual Company

c/o PCM Intermediaries, Inc.
130 William St.
ATTENTION: New York, N.Y. 10038

| | |
|---|---|
| RENEWING CERTIFICATE | C1156 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

### DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Gulf Oil Corporation etal<br>Pittsburgh, Pa. 15230 |
| COMPANY POLICY NUMBER | 5735-00-200290 |
| COMPANY POLICY PERIOD | 3/1/83 to 1/1/85 |
| CERTIFICATE PERIOD | 3/1/83 to 1/1/85 |

| | |
|---|---|
| ITEM 1<br>TYPE OF INSURANCE | Manuscript Excess Third Party Liability |
| ITEM 2<br>POLICY LIMITS AND APPLICATIONS | $500,000 part of $10,000,000 each occurrence and aggregate where applicable in excess of $10,000,000 each occurrence, insured of self insured retention |
| ITEM 3<br>COMPANY RETENTION | $350,000 including other facultative reinsurance |
| ITEM 4<br>REINSURANCE ACCEPTED | $150,000 |
| ITEM 5<br>BASIS OF REINSURANCE | ☐ EXCESS OF LOSS  ☒ CONTRIBUTING EXCESS  ☐ NON-CONCURRENT |
| ITEM 6<br>CANCELLATION | 105    DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $11,579.40 | ☒ FIXED  ☐ DEPOSIT | CED. COMM. | 27.5% |
|---|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | |
| DATE | | | | |
| DATE | | | | $8,395.06 |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE    March 23, 1983

BY _____
AUTHORIZED SIGNATURE



CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

CERTIFICATE NUMBER
**C 1217**

# PALADIN REINSURANCE CORPORATION
### NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of
Wausau A. Mutual Company

C/O J.L. Kelley Inc.
Mr. Robert Osborne

ATTENTION:

| | |
|---|---|
| RENEWING CERTIFICATE | RECEIVED WAUSAU IN? |
| REPLACING CERTIFICATE | SEP 2  1973 |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Internorth, Inc. etal<br>Omaha Nebraska  68102 |
| COMPANY POLICY NUMBER | 5733-00-300535 |
| COMPANY POLICY PERIOD | 6/1/82 to 61/1/83    CERTIFICATE PERIOD One Year |

| | |
|---|---|
| ITEM 1 TYPE OF INSURANCE | Excess CGL, CAL, EB XS WC & EL as per original |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $4,000,000 part of $15,000,000 each occ/agg where applicable excess each occurrence excess of SIR |
| ITEM 3 COMPANY RETENTION | $3,000,000 including other facultative reinsurance ($1,500,000 Net & Treaty) |
| ITEM 4 REINSURANCE ACCEPTED | $1,000,000 each occ/agg part of total limits |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS  ☒ CONTRIBUTING EXCESS  ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | 60  DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | $4650.00 | ☐ FIXED  ☐ DEPOSIT | CED. COMM. 27.5 |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $3371.00 net being $4650.00 less ceding comm. |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE  July 21,1982          BY _____
AUTHORIZED SIGNATURE

123 WILLIAM STREET
NEW YORK, NEW YORK 10038

**(hereinafter called the Reinsurer)**

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company, subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with ... ... ... ... Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears ... ... ... ... ... or of any occurrence which in the Company's estimate might ... ... ... ... seek to involve the certificate for where the ... ... ... ... greater of ... ... ... ... ... ... Item 3 of the declarations. ... ... ... in excess when notice of claim is received by the Company, the Company will furnish notice the Reinsurer ... ... ... ... ... of all developments ... to the claim. When the Reinsurer does not undertake to investigate or ... ... ... ... ... shall have the even the opportunity to associate itself ... ... ... ... ... at its own expense and the Reinsurer's expense in the defense ... ... ... ... ... in the prosecution of any ... ... ... insurance with the ... ... ... ... the Company ... is involved in this insurance which shall be by the Company shall be ... ... ... ... bound to pay, its proportion of such ... ... ... ... ... ... ... ... ... ... the lower an pay (1) its ... ... ... ... ... ... ... ... balances and other expenses) ... ... ... ... its proportion of ... ... ... ... (in any judgment or award and ... ... ... ... ... expenses (payment of ... ... ... ... and prosecutions has been ... ... ... from the Reinsured), is liable for with respect to reinsurance ... ... ... Excess of Loss Basis, if ... ... ... ... that the Reinsurer's loss payment ... ... ... ... ... and payments, and (b) with respect to ... ... insurance provided on a Pro Rata Basis ... ... ... ... that the Reinsurer's limit ... ... as to the Company's part of the liability.

**PROOF OF LOSS.** The Company shall furnish proof that payment of a ... ... expense has actually been made by the Company and payment by Reinsurer of its proportion of the of shall be made promptly, provided, ... in the event of the insolvency of the Company payment by the Reinsurer ... its proportion of loss or loss expense which the Company has incurred for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of the general conditions.

**C.** INSPECTION OF RECORDS. At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books, records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.** SALVAGE. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement of making such recovery. If the insurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which it also attaches.

**F.** OFFSET. The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.** WAR AND NUCLEAR EXCLUSION. The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.** PRIOR ATTACHMENT. If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.** CANCELLATION. (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's customary short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by sending not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.** TAXES. The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.** ENDORSEMENTS. The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.** INSOLVENCY. In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.** ARBITRATION. Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following the written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N.** INTERMEDIARY. The intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.** NON-CONCURRENT shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.** EXCESS OF LOSS shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.** CONTRIBUTING EXCESS shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary

_____ President

# PALADIN REINSURANCE CORPORATION
123 WILLIAM STREET
NEW YORK, NEW YORK 10038

## (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows.

## REINSURANCE AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except where otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement, heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G. WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H. PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I. CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate Proof of mailing shall be deemed proof of notice.

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(s) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations

IN WITNESS WHEREOF, the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary          _____ President



CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CERTIFICATE NUMBER
**C 1174**

RECEIVED
WAUSAU INTL

APR 5 1982

CEDING CO. AND ADDRESS

Employers Insurance of Wausau
A Mutual Company

C/O J.L. Kelley, Inc.
59 John Street
New York, N.Y.    10038

ATTENTION:

| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Ivaco Inc./Atlantic Building Systems Inc.  etal<br>Marieville, P.Q., Canada J0L 1J0 |
| COMPANY POLICY NUMBER | 2733-00-570068 |
| COMPANY POLICY PERIOD | 2/16/82  to  2/16/83  |  CERTIFICATE PERIOD  2/16/82  to  2/16/83 |
| ITEM 1 TYPE OF INSURANCE | Architects and Engineers Professional Liability as per form |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | C$10,000,000 each claim & aggregate in excess of<br>C$250,000 each claim |
| ITEM 3 COMPANY RETENTION | C$5,000,000 |
| ITEM 4 REINSURANCE ACCEPTED | C$1,000,000 |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | 75    DAYS NOTICE    Being 15 days plus original |

| PREMIUM THIS CERTIFICATE | C$11,880. | ☒ FIXED  ☐ DEPOSIT | CED. COMM.  27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | C$8,613.00 Net<br>Being |
| DATE | | | | |
| DATE | | | | C$11,880. Less |
| DATE | | | | Cede Comm. |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE  March 30, 1982

BY  _(signature)_
AUTHORIZED SIGNATURE

## PALADIN REINSURANCE CORPORATION

123 WILLIAM STREET

NEW YORK, NEW YORK 10038

### (hereinafter called the Reinsurer)

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the Company named in the Declarations Herein (called the Company) in respect of the Company's Policy as follows:

### REINSURING AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company's Retention specified in the Declarations. The liability of the Reinsurer as specified in the Declarations shall follow that of the Company subject in all respects to all terms, conditions and limits of the Company's policy, except for the otherwise specification or excluded herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations of the amount specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims of its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence or accident which may result in a claim hereunder...

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a claim of loss expense has actually been made by the Company and payment by the Reinsurer or its predecessor then of shall be made promptly, provided...

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company or elsewhere if mutually agreed, to inspect all books, records, and papers of the Company in any way pertaining to this reinsurance...

**SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvage (i.e. reimbursement obtained but not recovery made by the Company)...

**OFFSET.** The Reinsurer may offset any balances, whether on account of premiums, claims, adjustment expenses, salvage or any other amounts due from one party to the other under this Certificate or any other reinsurance...

**WAR AND NUCLEAR EXCLUSION.** The reinsurance afforded under this Certificate shall not apply to and does not cover...

**PRIOR ATTACHMENT.** In the event a loss under a policy, prior to the date of acceptance...

**CANCELLATION.** If, for any reason this Certificate is cancelled, this Certificate shall terminate...

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim...

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration...

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or to the Reinsurer through the Intermediary...

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than specifically set forth in the Declarations and/or endorsements attached...

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self-insured retention and the amount of liability of the Reinsurer applies proportionately to all loss settlements within the policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF, the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding unless signed by a duly authorized representative of the Reinsurer.

_Signature_     Secretary

_Edward S. Matthews_     President

# PALADIN REINSURANCE CORPORATION

RECEIVED
WAUSAU INT'L

MAR 3 1 1983

ENDORSEMENT NO.:  __1__

THIS ENDORSEMENT, EFFECTIVE __2/16/83__, FORMS A PART OF

CONTRACT NO.: __C1174__    ISSUED TO __Employers Insurance of Wausau a Mutual C__

ORIGINAL INSURED: __IVACO, Inc. etal__    POLICY NO.: __2733-00-570068__

In consideration of an additional premium of C$310.30 net

being C$428.00 less ceding commission it is agreed that

endorsement #8 of original cover extending coverage

to March 1, 1983 is accepted for reinsurance.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: __March 21, 1983__

AUTHORIZED SIGNATURE

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

CERTIFICATE NUMBER
**C** 1110

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau
a Mutual Company

C/O  PCM Intermediaries, Ltd.
90 William Street
New York, N.Y.   10038

ATTENTION: Mr. Alfred Amend

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Kentucky Agricultural Energy Corporation   etal<br>Franklin,  Kentucky |
| COMPANY POLICY NUMBER | 5733-00-100270 |
| COMPANY POLICY PERIOD | 12/18/81 - 12/18/83 |
| CERTIFICATE PERIOD | 12/18/81 - 12/18/83 |

| | |
|---|---|
| ITEM 1<br>TYPE OF INSURANCE | Extra Expense Liability arising from E & O per orig. |
| ITEM 2<br>POLICY LIMITS AND APPLICATIONS | $10,000,000 excess of $10,000,000 excess of $1,000,000 S.I.R. |
| ITEM 3<br>COMPANY RETENTION | $9,000,000 part of $10,000,000 including other facultative reinsurance |
| ITEM 4<br>REINSURANCE ACCEPTED | $1,000,000 |
| ITEM 5<br>BASIS OF REINSURANCE | ☐ EXCESS OF LOSS        ☒ CONTRIBUTING EXCESS        ☐ NON-CONCURRENT |
| ITEM 6<br>CANCELLATION | 45   DAYS NOTICE  Being 15 days plus original |

| PREMIUM THIS CERTIFICATE | $11,500.00 | ☒ FIXED   ☐ DEPOSIT | CED. COMM.  25% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $8,625.00 Net being $11,500.00 Less cede comm. |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE  February 26, 1982

BY  _____
AUTHORIZED SIGNATURE



# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___1___

This endorsement, effective __December 18, 1981__ forms a part of

Contract No.: _C 1110_ issued to _Employers Ins. of Wausau, A Mutual Comp._

Original Insured: _Kentucky Agricultural_ Policy No.: _5733-00-100270_
                 _Energy  etal_

It is understood and agreed that Company Policy Period and Certificate
Period are both corrected to read:

    December 18, 1981 to March 18, 1983

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _3/ 8/ 82_

Authorized Signature

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___2___

THIS ENDORSEMENT, EFFECTIVE ___4/14/82___, FORMS A PART OF

CONTRACT NO.: ___C1110___ ISSUED TO ___Employer's of Wausau, A Mutual Co.___

ORIGINAL INSURED: ___Kentucky Agricultural Energy___ POLICY NO.: ___5733-00-100270___
                  et.al.

It is understood and agreed that the company policy period
and certificate period are amended to read as follows:

"From December 18, 1981 until final acceptance of the
plant by the insured."

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: ___May 23, 1983___                  _Janice Kennard_
                                          AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

A Company Managed By
### *SYNCORP*

ENDORSEMENT NO.: _____#3_____

THIS ENDORSEMENT, EFFECTIVE March 18, FORMS A PART OF
1983

CONTRACT NO.: ___C1110___ ISSUED TO __Employers Insurance of Wausau__
a Mutual Company

ORIGINAL INSURED: Kentucky Agricultural ___ POLICY NO.: __5733-00-100270__
Energy Corp

In consideration of an additional net premium $1725.00 being $2300.00 less ceding commission it is agreed that endorsement #6 to original cover is hereby accepted.

· WAUSAU INTL ·

'S ,JL' 9, ^ , 59

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _May 22,1984_ _____                       AUTHORIZED SIGNATURE

123 William Street • New York, New York 10038 • Telephone 212 732 0825 • Telex 141498



CERTIFIC...E OF CASUALTY FACULTATIVE RE..ISURANCE

**CERTIFICATE NUMBER**
**C** 1250

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of
Wausau A Mutual Company

C/O J.L. Kelley, Inc.

ATTENTION:

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

## DECLARATIONS

| | |
|---|---|
| **INSURED & ADDRESS** | Metcalf & Eddy Inc. etal<br>Boston, Mass 92114 |
| **COMPANY POLICY NUMBER** | 5735-00-300326 |
| **COMPANY POLICY PERIOD** | 7/1/82 to 7/1/85 |

CERTIFICATE PERIOD

7/1/82 to 7/1/83

| | |
|---|---|
| **ITEM 1** TYPE OF INSURANCE | Excess Architects & Engineers Professional Liability |
| **ITEM 2** POLICY LIMITS AND APPLICATIONS | $10,000,000 each claim & aggregate excess of $5,000,000 each claim & aggregate excess of self insured retention. |
| **ITEM 3** COMPANY RETENTION | $9,500,000 including other facultative reinsurance |
| **ITEM 4** REINSURANCE ACCEPTED | $500,000 |

| **ITEM 5** BASIS OF REINSURANCE | ☐ EXCESS OF LOSS | ☒ CONTRIBUTING EXCESS | ☐ NON-CONCURRENT |
|---|---|---|---|
| **ITEM 6** CANCELLATION | 105 | DAYS NOTICE ☒ 40 days in the event of cancellation | |

| **PREMIUM THIS CERTIFICATE** | $5000.00 | ☐ FIXED ☐ DEPOSIT | CED. COMM. 27.5% |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE · | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | $95,000 Layer Min. | .13 per $100 of fees | $3625.00 net |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE August 20, 1982    BY _____

AUTHORIZED SIGNATURE



## (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's Policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations; or in this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. Where the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments; and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment to the Reinsurer of its proportion thereof shall be made promptly, provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on a Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such differences shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest

**N.   INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(s) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary          _____ President

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: __1__

This endorsement, effective __7/1/82__ forms a part of
Contract No.: __C1250__ issued to _Employers Ins of Wausau - a Mutual Co._
Original Insured: _Metcalf + Eddy Inc_ Policy No.: __5135-00-300 326__

It is understood and agreed that declarations
are amended and corrected as follows.

Item 6 - Cancellation - ~~105 days~~ _aho._
105 days advance notice at
anniversary only.

Ceding Commission : 25%
Estimated Premium 3750⁰⁰ NET



Issued
in point of
order on
9/20/82

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: __/  /__

_____
Authorized Signature

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___2___

THIS ENDORSEMENT, EFFECTIVE ___7/1/83___, FORMS A PART OF

CONTRACT NO.: ___C 1250___ ISSUED TO ___Employers Insurance of Wausau, A Mutual Co.___

ORIGINAL INSURED: ___Metcalf & Eddy___ POLICY NO.: ___5735-00-300326___

> In consideration of an additional premium of $3,750.00 Net,
> (being $5,000.00 Gross less 25% ceding commission), it is under-
> stood and agreed that this certificate is extended from 7/1/83
> to 7/1/84.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: ___July 28, 1983___

_____
AUTHORIZED SIGNATURE

ENDORSEMENT NO.: ___3___

THIS ENDORSEMENT, EFFECTIVE __7/1/83__, FORMS A PART OF

CONTRACT NO.: __C 1250___ ISSUED TO _Employers Insurance of Wausau, A Mutual Co._

ORIGINAL INSURED: _Metcalf & Eddy, Inc.___ POLICY NO.: __5735-00-300326__


In consideration of a return premium of $188.00 Net being 250.00 less ceding it is understood and agreed that premium audit for the period 7/1/82 to 7/1/83 is accepted by the reinsurer.


ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: __August 22, 1983__

_____
AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

A Company Managed By
### SYNCORP

ENDORSEMENT NO.: _____4_____

THIS ENDORSEMENT, EFFECTIVE _7/1/84____, FORMS A PART OF

CONTRACT NO.: _C1250_____    ISSUED TO Employers Insurance of Wausau, A Mutual Company

ORIGINAL INSURED: Metcalf & Eddy, Inc. Etal    POLICY NO.: 5735-00-300326_____

In consideration of a net return premium of $187.50 (being $250 Gross
less 25% ceding) it is understood and agreed that the audit for the period
7/1/83 to 7/1/84 is accepted.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _April 1, 1985_____

AUTHORIZED SIGNATURE

123 William Street • New York  New York 10038 • Telephone 212-732-0825 • Telex 141498

### CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

CERTIFICATE NUMBER **C 1390**

| | |
|---|---|
| CEDING CO. AND ADDRESS | |

Employers Insurance of Wausau,
A Mutual Company

c/o PCM Intermediaries

| | |
|---|---|
| RENEWING CERTIFICATE | C 1229 & C 1263 |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

RECEIVED
WAUSAU INTL
AUG 1 5 1983

ATTENTION:

## DECLARATIONS

| INSURED & ADDRESS | The Prudential Insurance Company of America, etal Newark, NJ |
|---|---|
| COMPANY POLICY NUMBER | 5734-00-200356 |
| COMPANY POLICY PERIOD | 7/1/83 - 7/1/84 |

CERTIFICATE PERIOD    7/1/83 - 7/1/84

| ITEM 1 TYPE OF INSURANCE | Umbrella Liability |
|---|---|
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $20,000,000 each occurrence and in the aggregate where applicable in excess of underlying insurance or self insured retention |
| ITEM 3 COMPANY RETENTION | A.  $2,000,000 p/o $5,000,000 Net & Treaty in excess of underlying<br><br>B.  $5,300,000 p/o $15,000,000 Net & Treaty in excess of A. |
| ITEM 4 REINSURANCE ACCEPTED | A.  $500,000<br><br>B.  $1,500,000 |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | 75    DAYS NOTICE |

| | | | |
|---|---|---|---|
| | A.  $4446.00 | | |
| PREMIUM THIS CERTIFICATE | B.   3354.00 | ☐ FIXED  ☒ DEPOSIT | CED. COMM.  27.5 |
| | TOTAL   $7800.00 | | |

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | Per $100 of payroll based on $1,956,960,642 in payroll | A.  .000227 | A.  3,223.35 |
| DATE | | | B.  .00017 | B.  2,431.65 |
| DATE | | | TOTAL | $5,655.00 |
| DATE | | | | |

MINIMUM PREMIUM - FOR REINSURANCE PERIOD

DATE  August 10, 1983

BY   *Bruce Kennard*
AUTHORIZED SIGNATURE

## PALADIN REINSURANCE CORPORATION
123 WILLIAM STREET
NEW YORK, NEW YORK 10038

### (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations, or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall, nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company

**G. WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided

**H. PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I. CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlement) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER**
**C** 1260

# PALADIN REINSURANCE
## CORPORATION
#### NEW YORK, NEW YORK

CEDING CO. AND ADDRESS

Employers Insurance of Wausau-
A. Mutual Company

C/O PCM Intermediaries, Ltd.

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

ATTENTION:

## DECLARATIONS

| | |
|---|---|
| INSURED & ADDRESS | Semta etal as per original Detroit, Michigan 48226 |
| COMPANY POLICY NUMBER | 5737-00-300549 |
| COMPANY POLICY PERIOD | 7/15/82 to 7/15/87 |

CERTIFICATE PERIOD
7/15/82 to 7/15/85

| | |
|---|---|
| ITEM 1 TYPE OF INSURANCE | Excess Architects & Engineers Prof Liab. |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $23,000,000 excess of $2,000,000 each claim/aggregate |
| ITEM 3 COMPANY RETENTION | This Layer:  $4,000,000 Net & Treaty part of $10,000,000 excess of $5,000,000 each claim/aggregate |
| ITEM 4 REINSURANCE ACCEPTED | $1,000,000 part of $10,000,000 excess of $5,000,000 each claim/aggregate |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | DAYS NOTICE    see endt # 1 ← |

**PREMIUM THIS CERTIFICATE** $8000.00    ☒ FIXED    ☐ DEPOSIT    CED. COMM. 25%

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | $6000.00 Net |
| DATE | | | | |
| DATE | | | | |
| DATE | | | | |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE  August 11, 1982

BY _____
AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

123 WILLIAM STREET
NEW YORK, NEW YORK 10038

## (hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A. REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company; subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate-period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B. CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item C of the Declarations; or if this reinsurance is on a contributing excess basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Reinsurer does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay: (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows: (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C. PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly; provided, however, in the event of insolvency of the Company the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory successor of the Company in accordance with the provisions of Section L of these general conditions.

**D. INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books, records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith.

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement of making such recovery. If the reinsurance afforded by this Certificate is on an Excess-of-Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company.

**G. WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided.

**H. PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**I. CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously, (b) This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed on Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J. TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K. ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L. INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M. ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N. INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O. NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards of risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P. EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(y) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q. CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations.

IN WITNESS WHEREOF the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary       _____ President

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___1___

THIS ENDORSEMENT, EFFECTIVE ___7/15/82___, FORMS A PART OF

CONTRACT NO.: ___C 1260___ ISSUED TO Employers Insurance of Wausau A.

Mutual Company

ORIGINAL INSURED: ___Semta etal___ POLICY NO.: ___5737-00-300549___

It is understood and agreed that coverage provided by this certificate shall be extended for a two year period (expiring July 15, 1987) from July 15, 1985 unless 135 (105 plus 30) days notice is given prior to the July 15, 1985 date that such extension will not be granted and return of unearned premium is tendered at that time.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: ___8/12/82___

_____
AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION

A Company Managed By
*SYNCORP*

ENDORSEMENT NO.: ___2___

THIS ENDORSEMENT, EFFECTIVE __7/15/82___, FORMS A PART OF

CONTRACT NO.: __C1260_____    ISSUED TO Employers Insurance of Wausau_____

ORIGINAL INSURED: __SEMTA, et al_____    POLICY NO.: 5727-00-300549_____

Pursuant to endorsement number 3 of the original policy, it is agreed

that:

A)   The coverage of this policy is hereby extended to apply to claims
     first made against the insured during seven hundred thirty (730)
     calendar days immediately following July 15, 1985 the effective
     date of cancellation or non-renewal of this policy. This seven
     hundred thirty (730) days interval is referred to as the extension
     period.

B)   The extension of coverage referred to in Paragraph 1., hereof
     shall apply only to claims which arise by reason of an act,
     error or omission in professional services performed prior to
     the effective date of such cancellation or non-renewal of this
     policy and which is otherwise covered thereunder.

C)   Nothing contained in this endorsement shall in any way increase
     the limits of liability or aggregate set forth in the declarations
     of the policy.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: __11/26/85_____

AUTHORIZED SIGNATURE



123 William Street • New York, New York 10038 • Telephone 212-732-0825 • Telex 141409.



# PALADIN REINSURANCE CORPORATION

A Company Managed By
### SYNCORP

ENDORSEMENT NO.: _____3_____

THIS ENDORSEMENT, EFFECTIVE _7/15/85_____, FORMS A PART OF

CONTRACT NO.: __C1260_____    ISSUED TO _Employers Insurance of Wausau_

ORIGINAL INSURED: __SEMTA et al_____    POLICY NO.: 5737-00-300549

In consideration of a return premium of $3,198.00 gross it is

agreed that this policy is cancelled effective July 15, 1985.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: _____11/26/85_____

Barbara a. Celen
AUTHORIZED SIGNATURE



**CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE**

# PALADIN REINSURANCE
## CORPORATION
NEW YORK, NEW YORK

| | CERTIFICATE NUMBER |
|---|---|
| | **C** 1070 |
| | WAUSAU |

CEDING CO. AND ADDRESS

Employers Insurance of Wausau

C/O Fred S. James & Co. of N.Y.

ATTENTION: Mr. Frank Ficarra

| | |
|---|---|
| RENEWING CERTIFICATE | |
| REPLACING CERTIFICATE | |
| PRODUCER CODE NO. | |

### DECLARATIONS

| INSURED & ADDRESS | Wigham Poland Holdings Ltd. | |
|---|---|---|
| COMPANY POLICY NUMBER | WHM 81/013 & Policy 5732-00-100220 | |
| COMPANY POLICY PERIOD | 5/1/81 to 5/1/82 | **CERTIFICATE PERIOD** 5/1/81 to 5/1/82 |

| ITEM 1 TYPE OF INSURANCE | Insurance Brokers Professional Liability |
|---|---|
| ITEM 2 POLICY LIMITS AND APPLICATIONS | Ł5,000,000 in excess of deductibles divided:<br>(a) Ł2,000,000 in excess of deductibles<br>(b) Ł3,000,000 in excess of (a) |
| ITEM 3 COMPANY RETENTION | (a) Ł1,791,600 part of Ł2,000,000 excess of deductibles and including other reinsurance.<br>(b) 100% of Ł3,000,000 in excess of (a) including other reinsurance. |
| ITEM 4 REINSURANCE ACCEPTED | (a) Ł208,400. part of Ł2,000,000 excess of deductibles<br>(b) nil part of Ł3,000,000 in excess of Ł2,000,000. |
| ITEM 5 BASIS OF REINSURANCE | ☐ EXCESS OF LOSS    ☒ CONTRIBUTING EXCESS    ☐ NON-CONCURRENT |
| ITEM 6 CANCELLATION | 45    DAYS NOTICE |

| PREMIUM THIS CERTIFICATE | Ł19,538. | ☐ FIXED  ☐ DEPOSIT | CED. COMM.  27.5 |
|---|---|---|---|

| INSTALLMENTS PAYABLE | | ESTIMATED PREMIUM BASE | RATE | EST. PREMIUM |
|---|---|---|---|---|
| AT INCEPTION | | | | |
| DATE | | | | Ł14,165 being |
| DATE | | | | Ł19,538 less |
| DATE | | | | 27.5% cede |
| | | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | | |

DATE    August 25, 1981

BY _____
AUTHORIZED SIGNATURE

# PALADIN REINSURANCE CORPORATION
123 WILLIAM STREET
NEW YORK, NEW YORK 10038
**(hereinafter called the Reinsurer)**

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

**A.   REINSURER'S LIABILITY & RETENTION.** The Company warrants to retain for its own account, the Company Retention specified in the Declarations of this Certificate. The liability of the Reinsurer as specified in the Declarations, shall follow that of the Company, subject in all respects to all terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's certificate period shall be as specified in the Declarations at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate.

**B.   CLAIMS AND SETTLEMENT.** The Company shall settle all claims under its policy in accordance with its terms and conditions. Prompt notice shall be given in writing to the Reinsurer by the Company of any occurrence which appears likely to involve this reinsurance or of any occurrence which in the Company's estimate the value of injuries or damages sought (without regard to liability) might result in a judgment in an amount sufficient to involve this certificate; or where the Company has created a loss reserve of fifty (50) percent or greater of the Company's retention set forth in Item 3 of the declarations, or if this reinsurance is on a contributing basis when notice of claim is received by the Company. The Company will further advise the Reinsurer, in writing, in a complete and timely manner of all developments relating to the claim. While the Company does not undertake to investigate or defend claims it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claims, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

All claims involving this reinsurance when settled by the Company shall be binding on the Reinsurer which shall be bound to pay its proportion of such settlements. In addition thereto, the Reinsurer shall be bound to pay. (1) its proportion of expenses (other than Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims or suits, and (2) its proportion of court costs, interest on any judgment or award and litigation expenses (provided its prior consent to legal proceedings has been obtained from the Reinsurer), as follows (a) with respect to reinsurance provided on an Excess of Loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payments, and (b) with respect to reinsurance provided on a Pro Rata basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

**C.   PROOF OF LOSS.** The Company shall furnish proof that payment of a loss and loss expense has actually been made by the Company and payment by the Reinsurer of its proportion thereof shall be made promptly, provided, however, in the event of insolvency of the Company payment by the Reinsurer of its proportion of loss and loss expense which the Company has incurred or for which it is liable, shall be made to the liquidator, receiver or statutory succesor of the Company in accordance with the provisions of Section L of these general conditions.

**D.   INSPECTION OF RECORDS.** At the request of the Reinsurer the Company shall place at its disposal and Reinsurer shall have the right at all reasonable times in the office of the Company, or elsewhere if mutually agreed, to inspect all books records and papers of the Company in any way pertaining to the reinsurance provided hereunder, including but not limited to claims in connection therewith

**E.   SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvages i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an Excess of Loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F.   OFFSET.** The Reinsurer may offset any balance(s) whether on account of premiums, claims, losses, adjustment expense, salvage or any other amounts due from one party to the other under this Certificate or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer whether acting as assuming reinsurer or as ceding company

**G.   WAR AND NUCLEAR EXCLUSION.** The reinsurance hereunder is subject to "Nuclear", "Nuclear Exclusion" and "War Exclusion" Clauses considered standard for the coverage provided

**H.   PRIOR ATTACHMENT.** If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted

**I.   CANCELLATION.** (a) Should the Company's policy be cancelled, this Certificate shall terminate simultaneously. (b) This Certificate may also be cancelled upon prior written notice by the Company or by the Reinsurer upon not less than the number of days listed in Item 6 of the Declarations, which notice shall state when thereafter the reinsurance afforded hereby shall termi-

nate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company calculation in the use of short rate or pro rata tables. (b) In the event of non-payment of premium this Certificate may be cancelled by the Reinsurer by giving not less than ten days prior written notice stating when the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice.

**J.   TAXES.** The Company shall be liable for taxes on premiums ceded to Reinsurer under this Certificate.

**K.   ENDORSEMENTS.** The terms of this Certificate shall not be waived, amended or in any way modified unless contained in an endorsement to this Certificate, executed by a duly authorized representative of the Reinsurer.

**L.   INSOLVENCY.** In the event of the insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company on the policy herein reinsured which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservator or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**M.   ARBITRATION.** Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed, that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N.Y., unless some other location is mutually agreed upon by the two parties in interest.

**N.   INTERMEDIARY.** The Intermediary named herein is hereby recognized as the Intermediary negotiating this Reinsurance for all business hereunder. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer through the Intermediary. Payments by the Company to the Intermediary shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Intermediary shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

**O.   NON-CONCURRENT** shall mean the reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations and/or endorsements attached. The retention of the Company and the liability of the Reinsurer shall be determined as though the Company's policy(ies) applied only to the hazards or risk of loss or damage specifically described in the Declarations and/or endorsements attached.

**P.   EXCESS OF LOSS** shall mean the limit of liability of the Reinsurer, as stated, applies(s) only to that portion of loss within the policy limits in excess of the applicable retention of the Company as stated in the Declarations.

**Q.   CONTRIBUTING EXCESS** shall mean the Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit(s) of liability of the Reinsurer applies proportionally to all loss settlements within policy limits in the proportion set forth in Item No. 4 of the Declarations

IN WITNESS WHEREOF, the PALADIN REINSURANCE CORPORATION has caused this Certificate to be signed by its President and Secretary, but same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_____ Secretary            _____ President

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___1___

RECEIVED
WAUSAU INT'L

OCT 1 ⊂ 1981

This endorsement, effective__May 1, 1981_____ forms a part of
Revised
Contract No.: 1033_____ issued to_Employers Insurance of Wausau_____

Original Insured:_Wigham Poland Holdings__Policy No.:_WHM81/013_____
Ltd.                                    Pol 5732-00-100220

It is agreed that certificate number is amended from C 1070 to
C 1033 revised.

It is further agreed that item 6 of the declarations is ameded
to read 75 days.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: 9/17/81

Authorized Signature

# PALADIN REINSURANCE CORPORATION

ENDORSEMENT NO.: ___2___

THIS ENDORSEMENT, EFFECTIVE Jan. 1, 1982, FORMS A PART OF

CONTRACT NO.: __C1033 Reviced__ ISSUED TO _Employers Ins. Of Wausau_

ORIGINAL INSURED: _Wigham Poland Holdings Ltd_ POLICY NO.: __5732-00-100220__

      In consideration of a return premium of Ŀ4660.00 net being Ŀ6428.00 less ceding commission it is understood and agreed that coverage is cancelled prorata effective as indicated above by reason of combination with Cert# C1126.

ALL OTHER TERMS AND CONDITIONS OF THIS CONTRACT REMAIN UNCHANGED.

DATE: ___8/20/82___

AUTHORIZED SIGNATURE

**IN THE MATTER OF THE ARBITRATION BETWEEN**

JUDGE KEENAN

|  |  |
|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| and | ) |
| | ) |
| PALADIN REINSURANCE CORPORATION, | ) |
| | ) |
| Respondent. | ) |
| | ) |

# 08 CV 0042

2008 Civ.

**PETITION TO CONFIRM
REVISED ARBITRATION
AWARD**

JAN 03 2008

U.S.D.C. S.D. N.Y.
CASHIERS

Petitioner Employers Insurance Company of Wausau ("Wausau") hereby petitions this Court

to confirm the Revised Arbitration Award from the arbitration between Wausau and Paladin

Reinsurance Corporation ("Paladin") as a judgment pursuant to 9 U.S.C. § 9.

## The Parties

1.     Wausau is an insurance company organized under the laws of Wisconsin, with its

principal place of business at 400 Westwood Drive, Wausau, Wisconsin 54402, that is authorized

to do insurance business in the State of New York.

2.     Paladin is a reinsurance company organized under the laws of the State of New York,

with its principal place of business in New York, New York, that is authorized to do insurance

business in the State of New York.

## Jurisdiction and Venue

3.      This Petition is brought under the diversity jurisdiction of this Court, 28 U.S.C. § 1332(a)(1), since there is complete diversity of citizenship between the parties and the amount at issue is greater than $75,000 exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) since Paladin is a New York reinsurance company and 9 U.S.C. § 9 since the venue of the arbitration was in New York City.

## The Reinsurance Contracts and the Arbitration Clauses

5.      Paladin reinsures Wausau pursuant to 19 certificates of facultative reinsurance (the "Reinsurance Contracts").

6.      Each of the Reinsurance Certificates contains an arbitration clause that requires, among other things, binding arbitration of irreconcilable differences of opinion between the parties concerning that Reinsurance Contract in New York, N.Y. (the "Arbitration Clauses").

## The Arbitration

7.      Paladin demanded arbitration against Wausau pursuant to the Arbitration Clauses in the Reinsurance Contracts by letter dated November 28, 2006, seeking, among other things, monetary relief from Wausau greater than $75,000.

8.      Two party-appointed arbitrators and a neutral umpire (collectively, the "Panel") were duly selected pursuant to the Arbitration Clauses.

2

9.     A telephonic Organizational Meeting was conducted before the Panel on February 27, 2006.   Prior to the Organizational Meeting, each party submitted a Position Statement summarizing its position.

## Wausau's Motion to Dismiss

10.     After the Organizational Meeting, Wausau moved to dismiss all claims against Wausau on the ground that all such claims were time-barred.

11.     Both parties made written submissions to the Panel with respect to the motion to dismiss.

12.     On August 8, 2007, the Panel conducted a hearing and heard oral argument from counsel for each party.

13.     After the hearing, the Panel permitted both parties to make an additional written submission of documentary evidence and each party did so.

14.     The Panel issued a Final Award dated August 29, 2007.  Paladin then asked the Panel to clarify the Final Award.

15.     In connection with Paladin's request for clarification, both parties made written submissions to the Panel.

## The Revised Final Award

16.     After deliberation, the Panel issued its Revised Final Award on September 12, 2007. A copy of that document is Exhibit A hereto. The Revised Final Award, among other things, held that all Paladin's claims in that arbitration were time-barred.

3

17.    No motion to vacate, modify or correct the Revised Final Award was made within the three-month period prescribed by 9 U.S.C. § 12.

**WHEREFORE,** Petitioner Wausau respectfully requests that judgment be entered confirming the Revised Final Award and awarding Wausau the costs and disbursements of this proceeding, and such other and further relief as may be just and equitable.

Dated: New York, New York    
      January 3, 2008

RUBIN, FIORELLA & FRIEDMAN LLP

By:    _____

Gerald A. Greenberger (GG 6032)

Attorneys for Petitioner    
Employers Insurance Company of Wausau

292 Madison Avenue, 11th Floor    
New York, New York 10017    
(212) 953-2381

421-8190\Petition to Confirm Rev. Arb. Award.wpd

4

# EXHIBIT A

In the Matter of the Arbitration Between
**PALADIN REINSURANCE CORPORATION,**                    Before
Petitioner,

                                                        Robert Robinson, Arbitrator
and                                                     Paul Hawksworth, Arbitrator
                                                        Elizabeth M. Thompson, Umpire

**EMPLOYERS INSURANCE COMPANY OF WAUSAU**
Respondent

### REVISED FINAL AWARD

This arbitration was commenced by demand served by Paladin Reinsurance Corporation
(Paladin) dated November 28, 2006. Respondent Employers Insurance Company of
Wausau (Wausau) filed a Motion to Dismiss Paladin's claims as time barred. After full
briefing and submission of evidence by the parties, the Panel conducted a telephonic
hearing on August 8, 2007. The Panel, after having considered and deliberated
concerning the evidence presented and the written and oral submissions of the parties,
issued its award on August 29, 2007. Subsequently Paladin requested the Panel to clarify
its award. The Panel, after having considered the parties' submissions with respect to
Paladin's request for clarification issues the following revised final award.

1. Both parties submitted documentary evidence in support of their respective
   positions. The parties acknowledged that the panel has been provided with all the
   information required to rule on the issue raised by Wausau's motion. See August 8,
   2007 Hearing Transcript p 52. The Panel therefore has treated this motion as a
   Motion for Summary Judgment.

2. It is undisputed that New York law applies to the contracts at issue and that the
   governing statute of limitations is the latter of six years from the date of the alleged
   breach or two years from the date Paladin knew of, or through the exercise of
   reasonable diligence could have discovered the alleged breach.

3. The Panel finds that Paladin knew of, or with the exercise of reasonable diligence
   could have discovered, Wausau's alleged breach of the retention warranties in the
   facultative certificates at issue more than two years prior to October 26, 2001.
   Accordingly the Panel finds that Paladin's claims in this proceeding are time barred.

4. Each party shall bear its own costs and fees and the fees and expenses of its party
   appointed arbitrator. Each party shall pay one half of the fees and costs of the
   umpire. The fees and expenses of the arbitrators and umpire shall be paid within
   30 days of submission of their billings.



5. All other requests of the parties are denied.

Dated   September 12, 2007

Robert Robinson   Arbitrator   *eml by permission*

Paul Hawksworth, Arbitrator   *eml by permission*

Elizabeth M Thompson, Umpire

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-21-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

EMPLOYERS INSURANCE COMPANY
OF WAUSAU,                                         2008 Civ. 0042 (JFK)

              Petitioner,          **STIPULATION AND**
                               **CONSENT TO ENTRY**
       and                    **OF JUDGMENT**
                               **AND DISMISSAL**

PALADIN REINSURANCE CORPORATION,

              Respondent.

------------------------------------------------------------ X

      IT IS HEREBY STIPULATED AND AGREED between the undersigned attorneys for both

parties in this proceeding:

      1.     That each party to this proceeding hereby consents to the confirmation pursuant to

9 U.S.C. § 9 of the Revised Final Award (the "Award") in the arbitration between the parties. A

copy of the Award is attached as Exhibit A hereto.

      2.     That each party consents to the entry of the Award as a Judgment of this

Court, along with the filing of the underlying agreements and the Petition to Confirm Revised Final

Award in this proceeding pursuant to 9 U.S.C. § 13.

      3.     That upon the above entry of said judgment, this proceeding shall be dismissed with

prejudice against renewal. Each party hereto shall bear its own costs.

Dated: January 28, 2008
       New York, New York



D'AMATO & LYNCH

By: _____
John P. Higgins (JH-2419)

Attorneys for Respondent
Paladin Insurance Company

70 Pine Street, 45th Floor
New York, New York 10270-0110
(212) 269-0927

RUBIN, FIORELLA & FRIEDMAN LLP

By: _____
Gerald A. Greenberg (GG-6032)

Attorneys for Petitioner
Employers Insurance Company of Wausau

292 Madison Avenue, 11th Floor
New York, New York 10017
(212) 953-2381

451-8190 Stip for Entry of Judgment and Dismissal.wpd

2

In the Matter of the Arbitration Between

**PALADIN REINSURANCE CORPORATION,**
Petitioner

Before:

Robert Robinson, Arbitrator
and                                        Paul Hawksworth, Arbitrator
Elizabeth M. Thompson, Umpire

**EMPLOYERS INSURANCE COMPANY OF WAUSAU**
Respondent

### REVISED FINAL AWARD

This arbitration was commenced by demand served by Paladin Reinsurance Corporation (Paladin) dated November 28, 2006. Respondent Employers Insurance Company of Wausau (Wausau) filed a Motion to Dismiss Paladin's claims as time barred. After full briefing and submission of evidence by the parties, the Panel conducted a telephonic hearing on August 8, 2007. The Panel, after having considered and deliberated concerning the evidence presented and the written and oral submissions of the parties, issued its award on August 29, 2007. Subsequently Paladin requested the Panel to clarify its award. The Panel, after having considered the parties' submissions with respect to Paladin's request for clarification, issues the following revised final award:

1. Both parties submitted documentary evidence in support of their respective positions. The parties acknowledged that the panel has been provided with all the information required to rule on the issue raised by Wausau's motion. See August 8, 2007 Hearing Transcript, p. 52. The Panel therefore has treated this motion as a Motion for Summary Judgment.

2. It is undisputed that New York law applies to the contracts at issue and that the governing statute of limitations is the latter of six years from the date of the alleged breach or two years from the date Paladin knew of, or through the exercise of reasonable diligence could have discovered the alleged breach.

3. The Panel finds that Paladin knew of, or with the exercise of reasonable diligence could have discovered, Wausau's alleged breach of the retention warranties in the facultative certificates at issue more than two years prior to October 26, 2001. Accordingly the Panel finds that Paladin's claims in this proceeding are time barred.

4. Each party shall bear its own costs and fees and the fees and expenses of its party appointed arbitrator. Each party shall pay one half of the fees and costs of the umpire. The fees and expenses of the arbitrators and umpire shall be paid within 30 days of submission of their billings.



5.  All other requests of the parties are denied.

Dated: September 12, 2007

Robert Robinson, Arbitrator

Paul Hawksworth, Arbitrator

Elizabeth M. Thompson, Umpire

### United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

Date:

In Re:

-v-

Case #:                    (        )

Dear Litigant,

Enclosed is a copy of the judgment entered in your case.

Your attention is directed to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires that if you wish to appeal the judgment in your case, you must file a notice of appeal within 30 days of the date of entry of the judgment (60 days if the United States or an officer or agency of the United States is a party).

If you wish to appeal the judgment but for any reason you are unable to file your notice of appeal within the required time, you may make a motion for an extension of time in accordance with the provision of Fed. R. App. P. 4(a)(5). That rule requires you to show "excusable neglect" or "good cause" for your failure to file your notice of appeal within the time allowed. Any such motion must first be served upon the other parties and then filed with the Pro Se Office no later than 60 days from the date of entry of the judgment (90 days if the United States or an officer or agency of the United States is a party).

The enclosed Forms 1, 2 and 3 cover some common situations, and you may choose to use one of them if appropriate to your circumstances.

The Filing fee for a notice of appeal is $5.00 and the appellate docketing fee is $450.00 payable to the "Clerk of the Court, USDC, SDNY" by certified check, money order or cash. **No personal checks are accepted.**

J. Michael McMahon, Clerk of Court

by: _____

, Deputy Clerk

APPEAL FORMS

Docket Support Unit

Revised: April 9, 2006

# United States District Court
## Southern District of New York
### Office of the Clerk
### U.S. Courthouse
### 500 Pearl Street, New York, N.Y. 10007-1213

-------------------------------------------X
|
|                                              **NOTICE OF APPEAL**
|
           -V-                             |
|
|                                              civ.            (    )
|
-------------------------------------------X

Notice is hereby given that _____
(party)

hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment [describe it]

entered in this action on the _____ day of _____ , _____ .
(day)                    (month)              (year)

_____
(Signature)

_____
(Address)

_____
(City, State and Zip Code)

Date: _____        (     ) _____-_____
(Telephone Number)

**Note:** You may use this form to take an appeal provided that it is <u>received</u> by the office of the Clerk of the
District Court within 30 days of the date on which the judgment was entered (60 days if the United States
or an officer or agency of the United States is a party).

FORM 1

## United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

------------------------------------------X
            |

            |     **MOTION FOR EXTENSION OF TIME**
            |     **TO FILE A NOTICE OF APPEAL**

    -V-        |

            |     civ.       (   )

            |

------------------------------------------X

      Pursuant to Fed. R. App. P. 4(a)(5), _____ respectfully
                                      (party)

requests leave to file the within notice of appeal out of time. _____
                                                      (party)

desires to appeal the judgment in this action entered on _____ but failed to file a
                                               (day)

notice of appeal within the required number of days because:

[Explain here the "excusable neglect" or "good cause" which led to your failure to file a notice of appeal within the required number of days.]

 

 

 

                                            _____
                                            (Signature)

                                            _____
                                            (Address)

                                            _____
                                       (City, State and Zip Code)

Date: _____      (   )_____-_____
                                            (Telephone Number)

**Note:** You may use this form, together with a copy of Form 1, if you are seeking to appeal a judgment and did not file a copy of Form 1 within the required time. If you follow this procedure, these forms must be <u>received</u> in the office of the Clerk of the District Court no later than 60 days of the date which the judgment was entered (90 days if the United States or an officer or agency of the United States is a party).

FORM 2

# United States District Court
## Southern District of New York
### Office of the Clerk
### U.S. Courthouse
### 500 Pearl Street, New York, N.Y. 10007-1213

```
---------------------------------X
                                 |
                                 |        NOTICE OF APPEAL
                                 |             AND
         -V-                     |   MOTION FOR EXTENSION OF TIME
                                 |
                                 |     civ.          (   )
                                 |
---------------------------------X
```

1.    Notice is hereby given that _____ hereby appeals to

                                                 (party)

the United States Court of Appeals for the Second Circuit from the judgment entered on _____.

                      [Give a description of the judgment]

2.    In the event that this form was not received in the Clerk's office within the required time

_____ respectfully requests the court to grant an extension of time in

                 (party)

accordance with Fed. R. App. P. 4(a)(5).

      a.    In support of this request, _____ states that

                                           (party)

this Court's judgment was received on _____ and that this form was mailed to the

                      (date)

court on _____ .

       (date)

                                _____

                                      (Signature)

                                _____

                                      (Address)

                                _____

                               (City, State and Zip Code)

Date: _____            (   ) _____-_____

                                  (Telephone Number)

**Note:** You may use this form if you are mailing your notice of appeal and are not sure the Clerk of the District Court will <u>receive</u> it within the 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

FORM 3

### United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

```
------------------------------------------X
                                          |
                                          |       AFFIRMATION OF SERVICE
                                          |
              -V-                         |
                                          |
                                          |       civ.          (    )
                                          |
------------------------------------------X
```

I, _____, declare under penalty of perjury that I have

served a copy of the attached _____

_____

upon  _____

_____

whose address is: _____

_____

Date: _____
     New York, New York

_____
         (Signature)

_____
          (Address)

_____
      (City, State and Zip Code)